Good morning, may it please the court. My name is Kari Hong and I represent Petitioner Ysaul Flores Peralta, whom I will refer to as Mr. Flores. Thank you, nice to see you again sir. I will discuss competency, reason to believe, and then cancellation. The easiest way for the court to resolve this case is to recognize that the BIA and IJ erred in upholding a competency finding that happened without a psychological evaluation. A year later, we had one that documented that Mr. Flores had cognitive decline from Alzheimer's. In the motion to reopen, the BIA claimed it May I ask a really threshold question here and that relates to exhaustion. In the government's brief in a footnote, they note the difference of course between admissibility in terms of an alien seeking admission and then inadmissibility and say that the seeking admission was not responded to in the reply brief on that. Why wouldn't we deem that issue not exhausted? Your Honor, the motion to reopen mentioned that the prejudice arising from not having a hearing with counsel was that he wasn't able to fight this inadmissibility argument. So it wasn't exhausted under the direct appeal but it does come in through the motion to reopen as a prejudice factor. I'm not quite sure why that would come in because we don't really have an effective assistance of counsel on the table, do we? The reason for the motion to reopen, the BIA never disputed it but they said there was no prejudice because he would have lost anyway. The showing is that actually if he did have a new hearing, he would have both been able to fight the inadmissibility ground as well as provide more equities in support of the prior grant of cancellation. I guess I'm distinguishing between inadmissibility and admission as an alien. So that's where I think perhaps we're crossing paths and not speaking in the same terms here in terms of your answer. So I'm asking really about the argument that the admission as an alien or seeking an alien seeking admission is actually the technical term. Where that was exhausted. Your Honor, just for clarification, is that about the reason to believe argument? Yes. The question is how was it? It goes to that. It goes to that but of course if you distinguish between the inadmissibility which was considered below in terms of the BIA but the alien seeking admission was not considered. Yes, Your Honor. I apologize. I misunderstood. Certainly at page 16 in the opening brief is my best answer to show exhaustion on that issue. Now the BIA did address the general matter regarding the inadmissibility. But not the alien seeking admission issue. Correct, Your Honor. And then that would be the general versus specific argument. I don't know why you say general versus specific. I guess I'm still having some trouble understanding because those are two very distinct grounds and very distinct statutory provisions. Yes, Your Honor. Mr. Flores had argued to the BIA that there were sufficient evidentiary defects in the record to contest his inadmissibility at the threshold, and that's at page 32. I would argue that that, although inartful, is enough to put this on notice to then allow counsel's more specific argument that I raised in the brief that the defects refers to what Lanzuela-Felix then talked about in terms of that there has to be something more in the evidence to uphold the reason to believe. Your Honor, would you like me to continue with competency or just jump into the reason to believe since we're there? No, you're welcome to go where you think it's most important. Okay, so Your Honor, back to the competency issue, which is the easiest to resolve because again it's a cleaner case, it was exhausted, is that the BIA said that the new evidence can't be considered because a year ago he was found competent, but the psychological report showed that there was a decline, that at one point he had average intelligence and now his functioning was measured at the 47th, 27th and 12th percentiles. The BIA wrongfully speculated that he could not have been impacted a year ago from that decline, but without evidence, Calderon-Rodriguez requires this to be sent back for a new competency hearing and allow him to present that evidence there. The IJ also erred in denying a continuance that was made in a timely manner before when he was before him. Mr. Florence requested a six-week continuance with a named psychologist who had a specific appointment and had been retained by the Florence Project to meet with him and evaluate the competency. The DHS did not oppose it. Under Garcia-Lynch, the IJ's denial of that continuance was air. The missing evidence was material, as we later found out, that he had impairments. Mr. Florence was not at odds for the conduct. Part of the delay arose when the DHS moved him between facilities in different cities which prevented him from getting a medical report earlier in time. This was the third extension request, continuance request, but it was unopposed. The Garcia-Lynch is a separate reason to then have a new competency hearing. Is he in custody? Not anymore. He was released just recently because of the COVID situation. So he's been in custody for over three years? Oh, no, he was released... Yes, but before that. Correct. How long was he in custody for? Your Honor, I don't have that exact information. I could look it up for the rebuttal or provide it to the court later. But it was a lengthy period. Was there a finding that he lacked knowledge or arguably a finding that he lacked knowledge before one of the IJ's? Yes, Your Honor. On that issue, that goes to the reason to believe argument, which I think is something very important here. This case is exactly what Judge Berzon predicted could happen, which is we could have an absurd situation where an LPR is going to be deported for a crime that a prosecutor reviewed and determined actually did not occur. So to your question about the finding of knowledge, when in the first inadmissibility hearing, which happened in January 2018, the IJ there, IJ Knopp, looked at the incident report, noted that in that incident report he denied knowledge, and noted again, he said, Sir, I hear that you are denying your knowledge again, but nonetheless upheld the inadmissibility ground. Under Gomez-Granillo, she needed to have been directed to show that if she credited his standard. The second time that he was before a different IJ at the actual merits hearing, again, the IJ cut off cross-examination of him on that issue by noting that the I-213 was hearsay. Unless she was planning to bring in the officer, she wasn't going to admit it and said that he has already denied knowledge of the marijuana in his van. And then finally, in his actual decision, when the IJ granted him... Well, right, he said there's no evidence of knowledge. Well, it's an ambiguous situation. In his finding, the IJ said he denied knowledge. The IJ then never commented further. I think at a minimum that's ambiguous under, again, Gomez-Granillo, that the IJ needed to be directed that if he believed his denial, that he then needed to vacate and undo the inadmissibility finding that the first IJ had made. I also think that you can read that to say that the IJ credited. But again, that's an ambiguity, but I do think there's enough there. The fact that he credited, mentioned, and then never imputed guilt to him is a reasonable inference. But under Gomez-Granillo, the ambiguity enough is enough to reverse that. So you're arguing that, just to clarify, that there should be a remand to address the competency issue? Yes, there are a number of... And what does that mean in terms of how this progresses? What would happen, it would vacate everything. He would have a new IJ hearing if he's found competent. The prior, everything would be reinstated. If he's found incompetent, then there would be a new proceeding. When you say everything would be reinstated, you mean we're sort of back on appeal, dealing with some of the core issues that we've been discussing already? Your Honor, if he's found competent, nothing more would happen. The existing decision would be reinstated without an appeal. If he's found incompetent, he would have the benefit of counsel to fully contest the inadmissibility ground, which would be a basis for termination, and further bolster the record to support the IJ's initial grant of cancellation. One thing, I'm sorry, I hope I'm not taking too much time, but the BIA made a reference to reversing because they felt that the IJ didn't appropriately consider the severity of the events. Do you recall that? Yes, I do, Your Honor. And I don't understand that statement because the issue isn't considering the severity, it's equally at least whether he had any knowledge of the drugs at all. So, help me understand what that reference means. Your Honor, I agree with your reading of that. And that's my third point, that the BIA engaged in improper fact-finding. The BIA can review factual findings, but it has to do so under clear air. What it looked like the BIA did is that instead of actually re-weighing the factors that the IJ found relevant, that the BIA made its own findings, primarily that the incident actually was a criminal matter versus what the IJ had concluded wasn't serious because he appears implicitly to accept his denial of the knowledge of the drugs there. You would agree, though, if we read it differently, that the BIA is not essentially overturning a factual finding on clear air, but simply re-weighing the facts, that would be proper for the BIA, correct? Yes, if the BIA is re-weighing a list of factors and comes out on the other side, they're allowed to do that and there's no review before this court to make any correction or change to that. Do you want to reserve your remaining time? Yes, Your Honor. Thank you. May it please the Court, Sarah Bird on behalf of the government. This case is about whether or not the Board abused its discretion in denying a motion to reopen. It did not. The motion to reopen was premised on an allegation that the pro bono attorney who represented Mr. Flores on appeal to the Board provided ineffective assistance of counsel and the Board rationally denied the motion finding, one, it wasn't ineffective assistance, but then, two, even if it was, it wasn't prejudicial because the outcome would have been the same, and then also finding, with regard to the new evidence, that that also wouldn't have changed the outcome. So, this really comes down to an abuse of discretion decision, whether or not the Board was rational in explaining why it denied the motion to reopen. With regard to the allegations of ineffective assistance, he's basically, petitioner is basically arguing that his attorney who defended the immigration judge, because keep in mind that he won before the immigration judge, the immigration judge granted him cancellation of removal and he was poised to walk out of court with a green card in back through the record, he did an excellent job presenting his case. He consistently denied the allegations in the notice to appear, contested removability, he presented hundreds of pages of evidence in support of his theory that he wasn't inadmissible and also in support of his application for relief, and then the immigration judge granted his application. So, that's the posture that it was at, at the point that his attorney came on board and his attorney argued that the Board should simply affirm the grant of cancellation. That was not ineffective assistance, that was a reasonable tactical decision. Now, in hindsight, after the Board reversed, he now wishes that he had said, oh, my hearing was fundamentally as to why, what he thinks his attorney should have argued on appeal. Let me, let me ask you on the exhaustion question, because I'm not sure that his counsel actually engaged with my distinction between an alien seeking admission and the inadmissibility. And it does seem to me that inadmissibility was fairly exhausted. But what is the government's position with respect to alien seeking admission, whether it was exhausted and whether it would have made a difference in how we look at the case? Yes, Your Honor. Our position is in the footnote that you referenced in the brief, and it is, we draw the same distinction that you're drawing. So, I agree that in the motion to reopen, he raises the reason to believe ground of inadmissibility. That was before the Board and the Board addressed it. But what he did not raise was the, whether he should have been considered seeking admission, an applicant for admission under Section 1101, I believe it's 813 or some, C13, but under the definition section of the INA. And that statute, he didn't engage with that. There are now six bases for a returning lawful permanent resident to be seeking admission. And while he contests the idea that he was inadmissible, one of the bases for regarding a lawful permanent resident as seeking admission is that that person is inadmissible under one of the 212 grounds. And that is the reason to believe ground, and he did address that. But there's another basis, and that's just that he engaged in illegal conduct after leaving the U.S. And there's no dispute that he bought cocaine. He testified that he went to Mexico. I mean, that doesn't quite answer, that doesn't quite, I understand the distinction between alien seeking admission and inadmissibility, which I think that was conflated in his brief. But if we agree with the government that the alien seeking admission prong was not exhausted, how does that fold into what we still have left for decision under inadmissibility? Right. So we would agree that that's not exhausted. Still left for decision is the reason to believe whether substantial evidence supports the determination that there was reason to believe that he was involved in trafficking. Now that is there, but it's under the umbrella of the ineffective assistance of counsel. He didn't directly raise that, but it came in under the allegation that his attorney was ineffective for failing to file a cross-appeal. Instead of just, his attorney argued that you should affirm the IJ decision, and he's arguing in hindsight his attorney should have cross-appealed. So with regard to the reason to believe, I think one key issue that I want to emphasize is that the immigration judge in the immigration judge's decision clearly finds true, and the immigration judge uses that word true, allegation number five in the notice to appeal. So this is in the context of a paragraph with the title removability, and then the immigration judge acknowledges petitioner, Mr. Flores, had denied that he knew about the marijuana, but then says that the judge found true allegation five in the notice to appear, which is the allegation that he did know about the marijuana. So there's no ambiguity in the immigration judge's findings of removability. The immigration judge knew that it was a decision of, do I credit his claim that he didn't know about it, or do I find that he did know about it, and the immigration judge found true the allegation that he did know about it. But there's no explicit finding in the IJ's determination that Flores was aware of the presence of marijuana in his van, correct? No, sir. I actually would say that there is an explicit finding that is explicitly what allegation five in the notice to appear says, that he attempted, allegation five in the notice to appear is that he attempted to bring marijuana in, and an attempt requires the knowledge, and the immigration judge explicitly found that true. Now, what we don't have is the immigration judge explicitly saying, therefore, having found that he knew about it, I find that he's not credible in his denials. We don't have an adverse credibility. I mean, isn't it a problem to have sort of check the box justice? You know, there's no record at all, just a statement of true based on an allegation. We don't know what was considered. We don't know what connections were made. We don't know anything about it. And that just seems like a dangerous road to go down. Well, your honor, we do know the evidence that was considered. The evidence showed that he was nervous when he arrived at the port of entry, that he did deny having anything, that there were anomalies in the van that he owned and drove. He was the owner and sole driver of the van. Knowledge is such a fundamental attribute of this type of dispute, because what goes on at the border, people do become unwittingly duped to do things. They do have a situation where a family member has a gun at their head, and they're told, you know, take this across or there's going to be trouble. I mean, I've seen all of those things. And, you know, to say that somebody is nervous when they're crossing the border. Well, he had some personal use drugs for sure. But, you know, again, I've never been a fan and maybe it's just me at this sort of demeanor type of approach to creating guilt or innocence, because there's so many unknowns with personalities. Certainly, Your Honor. I think the nervousness just gave them reason to continue searching. And then they tapped and they found the anomaly. So we're not resting solely on that. And at the end of the day, this type of case is going to come down to he denies that he knew it was there. But there's all this evidence. Okay. So then what does reason to believe mean under the context of has committed? Those are very different standards, as Judge Berzon pointed out, you know, years ago. This court addressed that in Lopez Molina, 2004 case. And you're referring, I believe, to the has committed in 1252 A2C? Yes. So this court directly addressed that in Lopez Molina and said that because 1252 A2C and the jurisdictional bar there refers to the grounds in 212 and the reason to believe is one of those grounds that it's encompassed. And it wrestled with that difference between has committed and reason to believe. And it came out with the determination that it's that although there are some differences in the phrasing that the reason to believe ground is enough to trigger the jurisdictional bar and that it therefore applies. So, of course, this court can still consider jurisdictional facts, which in this case are the main factual issue is the reason to believe. And the court can still consider that. But if the court finds that substantial evidence supports the reason to believe determination, then the jurisdictional bar would be triggered. Now, keep in mind, of course, that that's under the umbrella of ineffective assistance of counsel. I hate to be circular, but how can you find reason to believe that there's lack of knowledge? You know, the drug trafficking component, you know, defines drug trafficker. I don't think anyone's going to argue that this guy was a trafficker. He seems like at most he was either a knowing aiding and a better or he just didn't know. So knowledge is I mean, what's more pivotal to this whole analysis than knowledge? And what evidence do we have of knowledge? We have circumstantial evidence, Your Honor, and that's all. It's his word that he didn't know, which anyone who's caught is going to say they didn't know. Mostly versus the circumstantial evidence that he was the owner and only driver of the car that he never loaned it out. That it had hidden compartments built into it where he had a very large quantity, over 100 pounds of marijuana. And it's just circumstantial evidence. So I agree with you that if the immigration judge found that he did not know as a fact, then they couldn't sustain the charge of inadmissibility. But the immigration judge found true the allegation that he did know. So we have an explicit finding that he did know and the board affirmed that. Well, affirmed it in the context of the motion to reopen. And so then it just comes down to do you at this stage, does the record compel the conclusion that he lacked knowledge? And it really is. It's just his word against the circumstantial evidence. And it's a tricky case, but it's not compelling. It's not. It's the same as the evidence in Alicorn Serrano. I probably mispronouncing that where that petitioner also denied knowledge. And this court said that there was substantial evidence to support based on the circumstantial evidence. So so Lopez Molina is a jurisdictional case. But didn't Judge Burzon explicitly state that the applicable standard question is different? In which case? I'm sorry, Judge Burzon wasn't on Lopez Molina. Right. And her subsequent opinion. I don't have that. I'm sorry, I don't. As far as I know, Lopez Molina remains controlling precedent. And I don't know which Judge Burzon opinion you're referring to. Maybe it was an unfair question. I'm sorry. I would address it if I knew. But I just, to be honest, don't have enough context to know exactly what she meant. But really, in this case, the reason to believe is part of it as to the competency petitioner raised. Again, that comes in only if the court first finds that it was ineffective assistance of counsel for the attorney to not cross appeal and say that the petitioner was deprived of due process in a case he won before the IJ. And then also, if you look at it, the IJ reasonably found the record doesn't compel the conclusion that he wasn't competent because he did present consistent. Well, argued denial of removability and application for relief and his application for relief was granted. So, well, he subsequently was found to have dementia, and that's a tough diagnosis that doesn't show that at the time of his hearing, based on his interactions with the judge, he wasn't competent. And there is no legal requirement that the judge always has to order or continue a case to allow a forensic or psychiatric evaluation. The judge is allowed to make a competency determination based on evidence in the record, which in this case did include medical notes from a psychiatrist that he had visited in DHS facility. So the judge is allowed to make that competency determination and is not required to constantly continue for more evidence. If there are no further questions, I see I'm getting low on time. There's a lot of issues here, so I don't want to start on one. No, I mean, it appears there are a lot of questions, but we also have extensive briefing on everything, so it appears there's no further questions. Okay, thank you. Thank you. We turn to the Floris Peralta's counsel, Ms. Hung. Thank you. I have four points. First, the attorney at AR-84 said he was brand new to immigration law. This is his first immigration case, and after being confronted with the errors, agrees that he made a mistake in his appeal. Second, to answer your question, Judge Pregerson, Chavez-Gonzalez is the case you were referring to, where Judge Berzon said that there should be something different when a returning LPR is subject to the reason to leave. That is the has committed argument that I raised in the brief that Judge McKeown, when you asked whether it had been adequately exhausted, I'd made my best case if I didn't convince you. However, I would highlight that the inadmissibility and the reason to leave standard is still under review. And I agree with that. I mean, that was clearly addressed by the BIA. And so, if the court disagrees on the has committed, what's unique about this case is that every other reason to leave case, the Alcoran-Serrano and Gomez-Ranillo, there was evidence. The DHA has to prove something, and they did. In Alcoran-Serrano, there was an express disbelief that the IJ did not credit the denial because they believed that because he had bought the car four days before from a known drug dealer, he was in on the scheme. Under Gomez-Ranillo, there was an expert. Here, there's nothing other than the denial which the IJ at AR-201 noted when she upheld the reason to leave standard. And so, for that reason, I submit that even under the reason to leave standard, this is a low threshold that fails to meet it. Thank you. I just wanted to clarify, Ms. Hong, when you're listed with the law school there, does that mean that the students wrote the brief? Not this one, no. This one was mine. All right. Thank you. The case just argued, Flores-Peralta v. Garland is submitted. I thank both of you for your arguments this morning. The last case on the calendar, United States v. Scott, has been submitted, so we're adjourned for the morning.
judges: Hawkins, McKeown, Pregerson